IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LAURA MARIE JACKSON                                                           PLAINTIFF

V.                              NO. 4:20CV01333 BRW-PSH

SOCIAL SECURITY ADMINISTRATION                                    DEFENDANT

### RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.   Introduction:**

Plaintiff, Laura Marie Jackson, applied for disability benefits on October 24, 2018. (Tr. at 17). She also applied for supplemental security income benefits on October 30, 2018. *Id*. In both applications, she alleged disability beginning on June 1, 2018. *Id*. The applications were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge (ALJ) denied Ms.

Jackson's applications. (Tr. at 27). The Appeals Council declined to review the ALJ's decision. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner, and Ms. Jackson has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

**II.   The Commissioner's Decision:**

The ALJ found that Ms. Jackson had not engaged in substantial gainful activity since the alleged onset date of June 1, 2018.[1] (Tr. at 19). At Step Two, the ALJ found that Ms. Jackson had the following severe impairments: hypertension and osteoarthritis of the left hip and right knee. *Id*.

After finding that Mr. Barnes's impairments did not meet or equal a listed impairment (Tr. at 21), the ALJ determined that Ms. Jackson had the residual functional capacity (RFC) to perform work at the light exertional level, except that she could only occasionally stoop, kneel, crouch, and crawl. (Tr. at 22).

The ALJ next found that Ms. Jackson had no past relevant work. (Tr. at 25). The ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Jackson's age, education, work experience, and RFC, jobs existed

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

in significant numbers in the national economy that she could perform. (Tr. at 26). Therefore, the ALJ found that Ms. Jackson was not disabled. (Tr. at 27).

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'"

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

    B.   Ms. Jackson's Arguments on Appeal

Ms. Jackson contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ did not consider her impairments in combination; (2) the ALJ did not properly evaluate her subjective complaints; (3) the RFC did not fully incorporate her limitations; and (4) the ALJ failed to fully develop the record.

Ms. Jackson admits that the medical evidence is modest, and indeed, there is little to show that Ms. Jackson required regular or aggressive treatment for her conditions. She complained of hip pain, but x-rays of the right hip were normal, and

4

she said that Meloxicam improved her hip pain. (Tr. at 410, 427). A consultative examiner found that Ms. Jackson had full muscle strength and normal reflexes in all muscle groups. (Tr. at 426-427). Although Ms. Jackson complained of knee pain, the examiner found that she could stand on tiptoes and tandem walk without problems. *Id*. The examiner opined that Ms. Jackson could sit, walk, and stand for a full workday, and she could lift and carry objects up to 20 pounds. *Id*.

Despite claims of cardiovascular problems, cardiac exams were routinely normal, and Ms. Jackson admitted she never had a heart cath or echocardiogram. (Tr. at 411, 425-426). She also treated hypertension conservatively. *Id*. The Court notes that Ms. Jackson was sometimes non-compliant with treatment, which interfered with her progress. (Tr. at 417). And she admitted that she was told by doctors to try to walk every day.[2] (Tr. at 63-64). Moreover, she could do things like shop in stores, watch TV, go out alone, and perform chores.[3] (Tr. at 254-256).

While the record is "modest," as Ms. Jackson points out, the ALJ did a thorough job of discussing all of her alleged impairments.[4] He referenced her

---

[2] A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

[3] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[4] The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894

alleged depression, and found it to be non-severe. She did not take psychiatric medications and did not attend regular therapy. (Tr. at 59-64). A 2018 depression screen was negative. (Tr. at 410). While Ms. Jackson stressed that she had severe mental health problems, a diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. See *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). The ALJ properly considered all of Ms. Jackson's alleged impairments.

Ms. Jackson next contends that the ALJ did not properly consider her subjective complaints. When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ need not explicitly discuss each factor, and he may decline to credit

---

(8th Cir. 2006*); see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). Once the ALJ proceeds past Step Two, the labeling of an impairment as severe or non-severe has no legal significance; the medical record as whole is the basis for the determinations at Steps Three and Four. See 20 C.F.R. §§ 404.1545(e), 416.945(e); Social Security Ruling 96-8p, 1996 WL 374184 (the ALJ will consider all medically determinable impairments, even those that are non-severe, when assessing residual functional capacity).

a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Id*.

In this instance, the ALJ noted Ms. Jackson's daily activities, and he documented the nature of her pain and her improvement with medication. (Tr. at 22-25). He discussed the relevant objective findings and the opinions of the medical experts. *Id*. He also discussed the medical opinions. *Id*. The ALJ fairly considered Ms. Jackson's subjective complaints.

Next, Ms. Jackson argues that the RFC did not fully incorporate her limitations. As shown above, clinical exams were grossly normal and treatment improved her conditions. There was an issue with non-compliance, which undermines Ms. Jackson's allegations of disabling conditions. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

The consultative examiner found Ms. Jackson was capable of at least light work; the two Disability Determination Services medical experts reviewed the records and found also that Ms. Jackson could perform light work. (Tr. at 25). The credible evidence showed that the RFC incorporated all of Ms. Jackson's credible limitations.

Finally, Ms. Jackson argues that the ALJ should have sent her for further consultative examinations. The ALJ did send Ms. Jackson to a consultative

examination in Match 2019, and the examiner found mild limitations. (Tr. at 426-427). The ALJ had no obligation to send Ms. Jackson to a mental consultative examination because the record did not contain a treatment history for mental illness.[5]

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Jackson was not disabled. The ALJ considered all of the credible impairments and properly evaluated Ms. Jackson's subjective complaints. Moreover, the RFC accounted for her limitations and was based on a fully developed record. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 4th day of November, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5] While an ALJ has a duty to develop the record, this duty is not never-ending. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).